UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEN EAU CLAIRE, | |
| Plaintiff, | Case No. 1:15-CV-00084-EJL-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| HOME DEPOT U.S.A., INC., THD AT –HOME SERVICES, INC., and DOES 1-10, | |
| Defendants. | |

Pending before the Court in the above entitled matter is Home Depot U.S.A., Inc. and THD At-Home Services, Inc.'s (THD) (collectively Defendants) Motion for Summary Judgment. Dkt. 45. The matter is fully briefed and ripe for the Court's consideration.[1]

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

---

[1] Plaintiff argues the Motion for Summary Judgment should be denied based on Defendants failure to file a separate statement of material facts as required by Dist. Idaho Loc. Civ. R. 7.1. This argument is not persuasive to the Court. The purpose of allowing a separate statement of facts is to allow a party a full twenty (20) pages for its legal arguments. Here, Defendants combined both their statement of facts and legal argument within the twenty (20) page limit. This is not the sort of violation of the Local Rules to justify denying the motion. Rather, the motion shall be decided on its merits.

## FACTUAL BACKGROUND

Plaintiff Ken Eau Claire was employed as the Selling Sales Manager (SSM) for the Boise area's five Home Depot stores. Plaintiff maintains his employer was Defendant Home Depot U.S.A., but has not provided any evidence that establishes this fact. Rather, THD acknowledged in its Answer to the Complaint that Eau Claire's employer was THD, not Home Depot U.S.A. The Amended Complaint names both Home Depot U.S.A. and THD as defendants. Dkt. 40.

On March 26, 2012, Eau Claire was hired by THD to sell siding, roofing, windows, etc. to Home Depot customers. A Home Depot customer requests information about such contract services and then a SSM or Sales Consultant working under a SSM makes an appointment to meet with the customer to prepare and estimate and try to close the sale on such services. Eau Claire reported to the Branch Sales Manager, Michael Snyder. As SSM, there were times when Eau Claire had Sales Consultants work under him in which case he would be entitled to a portion of the sales generated by the Sales Consultants that worked under him.

It is undisputed that selling home repair/replacement contract services is a highly competitive market in the Boise area.

Eau Claire admits he suffered from vertigo since 2010. In September of 2014, Eau Claire experienced a fall while standing in a parking lot. On October 7, 2014, Eau Clare called Human Resources at a 1-800 number to inform them he had seen a doctor for his vertigo symptoms and the doctor recommended he avoid driving, climbing ladders and

other activities required in his job. Eau Claire indicated he had a referral appointment to another doctor for October 22nd, but that he had not made the appointment yet. The Human Resources person on the phone provided Eau Claire with other 1-800 numbers and indicated that paperwork would be sent to him to complete. Eau Claire maintains that when he called he was not asking for time off work and it was Human Resources that determined he should be off work for one month.[2] The one month of leave was pursuant to the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.

Prior to taking FMLA leave, Eau Claire had been disciplined three times for poor close rates on sales. A close rate is the percentage of customer service appointments that result in actual sales. THD had provided coaching for Eau Claire in June and July of 2014 to improve his close rates. On September 5, 2014, Eau Claire received a Final Counseling Notice for his low sales.

At the time Eau Claire was told he was being placed on FMLA leave for a month, he was the only THD sales representative in the Boise area. He did not have any Sales Consultants working under him at the time nor did he have anyone to cover his scheduled customer appointments for the next thirty days. Eau Claire called THD's Call Center and spoke with Antonio Lewis. Eau Claire informed Lewis he was going on a leave of absence and asked Mr. Lewis to cancel all of his appointments for the next 30 days and

---

[2] Plaintiff maintains he was not asking for time off work, but based on the nature of his sales work he needed to drive to appointments and climb ladders to provide estimates so it is reasonable that his employer would determine time off was appropriate for the employee's safety as well as the community's safety.

reschedule them for after his return. Because Eau Claire was a SSM he had the requisite authority to instruct Mr. Lewis to make the requested changes to the appointment calendar.[3]

Eau Claire maintains he took this action of canceling all his appointments because there was no one to cover for him and THD had not sent sales consultants to help cover his area in the past. Eau Claire does not deny he did not notify his supervisor before canceling all the appointments nor did he discuss a plan for coverage with his supervisor. Eau Claire states there was no written policy on what an employee should do when he is put on FMLA leave, so his actions were not violations of any THD policy.

Eau Claire acknowledged in his deposition that canceling appointments and even rescheduling appointments at least 30 days out, was not good customer service and could result in lost sales opportunities.

Upon receiving email notification of Eau Claire's leave from the Human Resources department at approximately 1:00 p.m. on October 7, 2014, Branch Sales Manager Snyder, began working on finding coverage for Plaintiff's customer appointments. Snyder called up Eau Claire's calendar of appointments on his computer. He took a screen shot of the appointments and took steps to set up coverage for the

---

[3] Eau Claire does not remember exactly what he told Mr. Lewis. But Plaintiff's failure to remember does not create a genuine issue of material fact since Mr. Lewis' testimony is undisputed that he was instructed to cancel all appointments and if possible reschedule them for 30 days later when Plaintiff was scheduled to return to work.

appointments by Sales Consultant David Wright who worked in the Portland market under SSM Al Hackett.

When Snyder logged back on to discuss the calendar with another employee on October 8th, the appointments were gone from the computer system (apparently this occurred after Eau Claire's call to the Call Center). Snyder scrambled to try to recreate Eau Claire's calendar of appointments based on his screen shot of the earlier calendar and scheduled another SSM or Sales Consultant to attempt to reschedule appointments with customers. Sales Consultant David Wright, from another market area, was able to recover some of the appointments, but most of the appointments were lost. Snyder considered Eau Claire cancellation of all his appointments for the next thirty (30) days a major work violation of THD's customer service policy. Snyder believed the cancelled appointments had resulted in lost sales as well as some damage to Home Depot's reputation for excellent customer service.

It is undisputed that pursuant to the Employee Handbook, customer service is the number one priority for all employees. Dkt. 48-18. Eau Claire maintains a customer service violation can be either a major or minor violation depending on the conduct. "Major violations are those behaviors that are so serious in nature that they typically warrant immediate termination upon the first offense; however, a final warning may be appropriate depending on the circumstances and behavior at issue." *Id.* Minor violations are those behaviors that although not permitted, are generally addressed through the progressive disciplinary process which is a four step process of coaching, counseling,

MEMORANDUM DECISION AND ORDER - 5

final warning and termination. *Id.* The Employee Handbook also states "[m]anagers have the discretion to determine what other behaviors are violations, and what discipline is appropriate." *Id.*

Snyder determined that based on the violation of Home Depot's policy on customer service, Eau Claire should be immediately terminated for cancelling/rescheduling all his appointments. Snyder was advised by Human Resources Manager Sharon Lewis that Plaintiff could not be terminated while he was on FMLA leave because she needed to complete an investigation regarding Snyder's allegation of a violation of the customer service policy and this could not be completed until Eau Claire returned to work and could be interviewed. When Plaintiff returned to work, Ms. Lewis investigated Snyder's concerns by reviewing documents related to the customer appointments and interviewing employees that included Snyder, Eau Claire and Antonio Lewis.

Eau Claire called to return to work on November 7, 2014. He was returned to active status on November 8, 2014, but he was informed THD needed a release from his doctor to return to work. A release from Eau Claire's doctor dated November 10, 2014 was faxed to THD November 17, 2014. Eau Claire began working again on or about November 18, 2014.

Eau Claire returned to his same position as SSM and his compensation was the same as before he went on leave. Eau Claire maintains his computer access was not the same when he returned. He claims he had Sales Consultant access, but did not have SSM

MEMORANDUM DECISION AND ORDER - 6

access to the calendar. THD acknowledges based on the Eau Claire's unilateral canceling of his customer's appointments when he went on leave, his computer access was limited to a Sales Consultant access which still allowed Eau Claire to enter and manage his customer appointments onto the system. Since Eau Claire did not have any Sales Consultants working under him when he left or when he returned, THD maintains his limited computer access did not impact his ability to fulfill his job duties. Eau Claire maintains his computer access restricted him from acting as a SSM but does not explain why since he also admits he had no Sales Consultants under him.

At the time Eau Claire returned to work, SSM Hackett out of Portland was still assigned as the manager and there was still a Sales Consultant from another market working under Hackett to cover appointments. Snyder also maintains Plaintiff's access was restricted to Sales Consultant access because SSM Hackett had sales manager access as he was still supervising the sales consultant brought on to cover appointments while Plaintiff was on leave.

Eau Claire does not deny he unilaterally asked the IT department to return his manager access and to put Hackett's Sales Consultant under him so that he could receive compensation for the Sales Consultant's sales. This action was brought to Snyder's attention when Hackett complained of the change in supervision for his Sales Consultant. It appears from the record, that Eau Claire may have requested IT to change the access more than once without consulting his supervisor. Snyder copied Eau Claire in an email dated November 18, 2014, that directed IT to restore Eau Claire's manager access on the

MEMORANDUM DECISION AND ORDER - 7

computer. Snyder also claims there were IT issues out of his control that delayed restoring manager access to Plaintiff.

Eau Claire disputes some of the information compiled on a spreadsheet regarding the canceled appointments. Ms. Lewis indicated she did not consider the disputed "outcomes" of the appointments in making her recommendation for termination of Eau Claire. On December 15, 2014, Eau Claire was terminated.

On March 1, 2015, Eau Claire filed his Complaint alleging a violation of the FMLA. Eau Claire maintains that he was not returned to his pre-leave position and was terminated for taking leave. Plaintiff seeks compensatory and declaratory damages under the FMLA. Defendants move for summary judgment arguing Eau Claire was not denied FMLA leave, was re-instated to his pre-leave position when he returned and he was ultimately terminated for workplace violations – not for taking FMLA leave.

## STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant

unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

## ANALYSIS

### 1. The FMLA In General

The FMLA guarantees that an employee taking medical leave will not result in a loss of job security or in other adverse employment actions. "[T]he FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 112, 1122 (9th Cir. 2001); 29 U.S.C. § 2615(a). The case law has developed two theories of recovery under § 2615: the retaliation or discrimination claim

and the entitlement or interference claim. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 & n. 7 (9th Cir. 2003).

The retaliation or discrimination claim is where an employer denies requested FMLA leave or terminates an employee for requesting FMLA leave. 29 U.S.C. § 2615(a)(2). The Ninth Circuit has determined the burden shifting analysis model from *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) applies to a discrimination or retaliation claim. While Plaintiff alleges in his Complaint THD "retaliated" against him, he has technically not brought a retaliation or discrimination claim under the FMLA. This is because THD granted FMLA leave to Eau Claire and he was not terminated due to asking for leave. He was indirectly asking for leave by calling the 1-800 Human Resources number and sharing his doctor recommendations that clearly impacted his ability to complete his job duties. It was at that point he was informed he would be placed on FMLA leave for one month based on his medical condition and doctor's recommendation regarding Eau Claire's work limitations. "The anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because [he] has used FMLA leave." *Bachelder* at 1124.

Instead, Eau Claire's claim is an entitlement or interference claim pursuant to § 2615(a)(1). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the substantive rights guaranteed by the FMLA. 29 U.S.C. § 2615(a)(1). The right of reinstatement is the linchpin of the entitlement theory. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). This is because the

FMLA provides leave with the understanding and expectation that the employee will return to work when the leave ends. *Id.* (citations omitted). The Ninth Circuit, unlike some of the other circuits, has determined that the burden shifting framework of *McDonnell Douglas* does *not* apply to entitlement or interference claims under the FMLA. *Id.* Therefore, any argument that the employer's reasons for adverse employment action based on "pretext" are not part of the analysis of the claim for purposes of summary judgment.

The relevant regulations explain that an interference claim prohibits an employer's consideration of and employee's use of FMLA leave in making adverse employment decisions. *Bachelder* at 1122; 29 CFR § 825.220(c). Otherwise, employees would not take leave in fear of being fired or otherwise disciplined.

"To state an prima facie interference claim, an employee must show "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which is was entitled." *Bachelder* at 1124.

In this case, the first four elements are not disputed. The legal questions relate to the fifth element: did THD deny Eau Claire his reinstatement benefit and/or did THD use the FMLA leave as a negative factor in his termination. Stated another way, the employee has to prove by a preponderance of the evidence that the employer did not reinstate the employee to his or her job or an equivalent job and/or that the taking of the FMLA

protected-leave constituted a negative factor in the decision to terminate the employee. "[An employee] can prove this claim, as one might any ordinary statutory claim, by using direct or circumstantial evidence, or both." *Id.* (citing *Bachelder*, 259 F.3d at 1125). "[T]he employer's intent is not a relevant part of the entitlement inquiry. *Id.* (citing *Xin Liu*, 347 F.3d 1135; *Bachelder,* 259 F.3d at 1120).

The statutory right to reinstatement is not without limits. *Id.* "Nothing in this section shall be construed to entitle any restored employee to ... any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). "Although the FMLA generally confers the right to reinstatement, an employer may still terminate an employee during her leave if the employer would have made the same decision had the employee not taken leave." *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1097 (9th Cir. 2007). "[A]n employer is not required to cease pursuing a disciplinary course of action against an employee that began before that employee took FMLA leave, simply because that employee took leave." *Swan v. Bank of Am.*, 360 Fed. Appx. 903, 906 (9th Cir. 2009).

### 2. Who was the Employer of Plaintiff?

Defendants maintain that Home Depot U.S.A. was not Plaintiff's employer and that it is a separate legal entity responsible for hiring employees for Home Depot stores. Defendants argue Plaintiff was an employee of THD which is a different legal entity responsible for hiring employees related to the selling the contract services and

supervising installation of the contract services. Plaintiff directs the Court to the job application and other documents that reference Home Depot U.S.A.

The Court finds while certain employment documents do cite Home Depot U.S.A., Defendants have established two different legal entities exist. Plaintiff has failed to establish joint employer liability for Home Depot U.S.A. *See Moreauv. Air France*, 356 F.3d 342, 950 (9th Cir. 2003). Accordingly, for purposes of this litigation, the Court finds as a matter of law THD was Eau Claire's employer and the claims against Home Depot U.S.A. must be dismissed.

### 3. Was Eau Claire Reinstated to His Same Position or an Equivalent Job?

Eau Claire claims he was not reinstated to the same SSM position as he was delayed from returning to work after the 30 days of FMLA leave was completed, his computer access was restricted, he was not included in manager meetings, and he was not allow compensation for the Sales Consultant that still was covering appointments when he returned to work. THD claims he was returned to the same position at the same pay and while his computer access was temporarily restricted, such restriction did not keep him from doing his sales job of customer appointments and closing sales. THD argues the delay in returning to work was not THD's but Plaintiff's since he was advised he needed to provide a letter from his doctor authorizing his return to work and such documentation was not received until November 17, 2014. Finally, THD argues Eau Claire was not entitled to compensation for the covering Sales Consultant as that Sales Consultant

MEMORANDUM DECISION AND ORDER - 14

reported to SSM Hackett. Eau Claire does not dispute before he went on leave he did not have any Sales Consultants working under him that generated compensation payable to him.

First, under the applicable regulations, an employer may require medical certification that the employee is "fit for duty: before allowing the employee to return to work. See 29 CFR § 825.310(a). Therefore, the fact that Eau Claire claims he was temporarily delayed returning to work does not rise to the level of an interference with his right to reinstatement since it is undisputed after receiving the medical release Plaintiff starting working again.

Second, the Court finds there are no genuine issues of material fact to support Eau Claire's claim he was not reinstated to the same position and the same compensation he had before he took FMLA leave. While computer access issues existed, his job was the equivalent of his job when he left. He was responsible for scheduling customer appointments and selling contract services provided by THD in the Boise area. Nothing kept him from using the computer access he initially had upon his return to complete these job duties. Eau Claire did not have a Sales Consultant under him when he left and he did not have one under him to manage when he returned so the lack of SSM computer access for a short period of time has not been shown to result in Eau Claire being anything but an SSM when he returned to work. The Court finds Eau Claire's unilateral adjustment of his computer access through the IT department also corroborates and establishes he had SSM authority when he returned to work. Plaintiff's complaints about

computer access and missing a manager meeting do not change the fact the job he returned to was at a minimum an equivalent job to his job before he went on FMLA leave.

For these reasons, the Court finds there is not a genuine issue of material fact related to this claim and as a matter of law the Plaintiff's claim he was denied reinstatement to his pre-leave job is without merit. The undisputed facts of this case establish that Plaintiff was reinstated to his same position with the same compensation and/or he returned to an equivalent job. Therefore, this claim must be dismissed.

**4. Was Eau Claire's Taking FMLA Leave a Factor in His Termination?**

Plaintiff argues that he has established genuine issues of material fact regarding whether or not his FMLA leave was a factor in his termination. The Court respectfully disagrees. There is nothing in the record submitted that supports a finding that Snyder or Ms. Lewis made the decision to terminate Plaintiff because he took FMLA leave. Neither of these persons were involved in the decision to grant FMLA leave as Plaintiff admitted this decision was made by the Human Resources person who answered the 1800 call. There are no statements or other evidence that Snyder made the decision to terminate Eau Claire based on the fact Eau Claire had qualified for FMLA leave.

The record is clear and undisputed that Snyder sought to terminate Eau Claire based on Plaintiff's unilateral decision to cancel all his customer appointments and to reschedule them for 30 days out. Snyder considered this a major violation of the customer
MEMORANDUM DECISION AND ORDER - 16

service policy of THD. Moreover, Eau Claire does not dispute that he unilaterally asked the Call Center to cancel the appointments and that his actions may have negatively impacted the customer service provided to the scheduled customers and probably led to lost sales. Eau Claire argues instead that such a customer service violation need not be a major violation. Rather, Plaintiff maintains his actions could be a minor violation under the Employee Handbook and he disputes some of the information compiled regarding the cancelled appointments is disputed.

The alleged customer service violation was investigated by Ms. Lewis and she did not complete her investigation until she had the opportunity to review the spreadsheet of appointments and interview Plaintiff and other employees. She determined that a work violation had occurred and that termination of Plaintiff's employment was justified based on the nature of the customer service violation. This decision to terminate Plaintiff was not made until approximately a month after Plaintiff was cleared to work again. Nothing in the testimony or exhibits indicate that the FMLA leave taken by Eau Claire was in any way a factor or consideration in Ms. Lewis' recommendation to terminate Eau Claire.

Eau Claire seeks to make his interpretation of the Employee Handbook a genuine issue of material fact to avoid summary judgement being granted. However, the express language of the Employee Handbook establishes that customer service is the top priority for all employees and that it is ultimately left to the manager's discretion to determine if a work violation is a major or minor violation. Here Snyder consulted with the Human Resources department and only after an investigation into the undisputed customer

violation was investigated was the final decision made to terminate Plaintiff. Snyder was consistent from the time he discovered the unilateral cancellation of appointments that his decision to terminate Plaintiff was based on the cancellation of customer appointments. This is true even though Eau Claire had received a Final Notice for other work performance issues in September of 2014.

Plaintiff argues there was not a policy on how to arrange coverage when going on leave so the manner in which he decided to cancel appointments cannot have been a work violation. This argument is not persuasive and does not create a genuine issue of material fact as the Employee Handbook allows a manager discretion to determine if conduct rises to a major or minor work place violation.

Plaintiff next argues that Snyder's reasons for terminating him were pretext for Eau Claire taking FMLA leave. As discussed earlier, the burden shifting analysis which includes pretext does not apply to an interference claim. Plaintiff has to prove by direct or circumstantial evidence his taking of FMLA leave was a factor in his termination. Further, employer intent is not relevant. *Bachelder*, 259 F.3d at 1120. Speculation on the part of Plaintiff is insufficient circumstantial evidence when the record is void of testimony or exhibits that indicate the FMLA leave was a factor in the termination decision by Snyder and Ms. Lewis.

As discussed earlier, the FMLA does not prevent an employer from terminating an employee if the employer would have made the same decision had the employee not taken leave. *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1097 (9th Cir. 2007).

Here, the undisputed facts establish the employee was terminated for conduct unrelated to his medical leave. He was terminated due to poor customer service based on his independent decision to have the Call Center cancel or reschedule all his appointments. The poor customer service in an admitted competitive market is the business reason for the termination. There has been no evidence presented to support Eau Claire's claim his medical leave was a factor in his termination. It was his actions as he started his leave, which he considered proper, but which his manager did not, that caused his termination for a major work violation.

### 5. Conclusion

The Court finds there are no genuine issues of material fact that prevent the motion for summary judgment from being granted on the interference claim. While Plaintiff disputes the some of the specific facts, he does not dispute the material fact that his act of cancelling customer appointments was a violation of the customer service policies of his employer. There is simply no evidence to support he did not have the same or an equivalent job when he returned or that his employer factored in his taking of FMLA leave in its decision to terminate his employment. For these reasons, the Court finds Defendants' Motion for Summary Judgment should be granted on all counts in the Complaint.

**ORDER**

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 45) is **GRANTED** and Judgment shall be entered in favor of Defendants on all claims.

DATED: February 3, 2017

_____
Edward J. Lodge
United States District Judge